1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

SARAH PALLESON,

                          Plaintiff,

v.

BOSTON SCIENTIFIC
CORPORATION,

                          Defendant.

Case No. 21-cv-1037-MMA (RBB)

**ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS**

[Doc. No. 9]

On June 1, 2021, Sarah Palleson ("Plaintiff") filed a complaint against Boston Scientific Corporation ("Defendant") alleging four causes of action under California law: (1) strict liability for failure to warn; (2) strict liability for a manufacturing defect; (3) negligence; and (4) negligent misrepresentation.  Doc. No. 1 ("Compl.").  Defendant now moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Doc. No. 9. Plaintiff filed an opposition, to which Defendant replied.  *See* Doc. Nos. 10, 11.  The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1.  *See* Doc. No. 12.  For the reasons set forth below, the Court **GRANTS** Defendant's motion to dismiss.

# I. BACKGROUND[1]

Defendant is a manufacturer that "design[ed], manufactur[ed], market[ed], distribut[ed]," and sold a polypropylene Obtryx Mesh Product Transobturator Midurethral Sling System ("Mesh Product"). Compl. ¶ 1. Plaintiff was implanted with the Mesh Product on November 5, 2009, to treat Plaintiff's stress urinary incontinence.[2] *Id.* ¶¶ 1, 7, 81, 82.

Plaintiff's action arises from harm she continues to suffer since the implantation. Plaintiff explains Defendant's Mesh Product "contain[s] monofilament polypropylene mesh," which is used to treat pelvic prolapse and stress urinary incontinence. *Id.* ¶ 15. However, Plaintiff further asserts that "scientific evidence shows that [polypropylene mesh] as implanted in Plaintiff is not inert [and is] biologically incompatible with human tissues and promotes a negative immune response in a large subset of the population implanted with pelvic mesh products, including the Mesh Product." *Id.*

After implantation of the Mesh Product, "Plaintiff began to experience [a] painful bladder, bleeding, and inability relieving her bladder," among many other conditions that later developed. *Id.* ¶¶ 8, 87. Plaintiff visited her treating physicians after implantation and they informed her that "her symptoms were not related to the Product and were, instead[,] attributed to [other causes] unrelated to the Mesh Product." *Id.* Plaintiff asserts the Mesh Product was implanted appropriately and properly. *Id.* ¶ 83. Plaintiff provides details of the risks and impacts from mesh implantation to treat stress urinary incontinence or pelvic organ prolapse, most notably irritation or injury to the muscles, scar tissues, inflammation, nerve damage, and chronic pain.[3] *See id.* ¶ 86. Plaintiff

---

[1] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the Complaint. *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976).

[2] Plaintiff notes that the Mesh Product has since been explanted. *See* Compl. ¶ 86.

[3] Plaintiff explains in extensive detail the implications and risks that have been linked to implantation of mesh products similar to and including the Mesh Product. *See, e.g., id.* ¶¶ 21–25, 30–32, 34–43, 49–56, 70–75.

discusses FDA communications, professional association opinions, articles, and other publications to support her contentions of pelvic mesh products' associated risks and complications.  *See, e.g.*, *id.* ¶¶ 29–32, 34–38, 40–41, 45, 53.

In sum, Plaintiff asserts Defendant knew or should have known of the risks associated with and complications of the Mesh Product, failed to warn Plaintiff and others of the risks, and underreported or misrepresented the risks and consequences of the Mesh Product.  *See id.*  Further, Plaintiff alleges Defendant's defective Mesh Product causes her to suffer from physical and mental pain.  *See id.* ¶ 1.  Based on these allegations, Plaintiff brings the four aforementioned causes of actions against Defendant.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6).  The plausibility standard demands more than a "formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)).  The court need not take legal conclusions as true merely because they are cast in the form of factual allegations.  *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Similarly, "conclusory allegations

of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). "However, [courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) (citing *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399. 1403 (9th Cir. 1996)).

Additionally, allegations of fraud or mistake require the pleading party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The context surrounding the fraud must "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "'Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged.' A party alleging fraud must 'set forth more than the neutral facts necessary to identify the transaction.'" *Kearns*, 567 F.3d at 1124 (citation omitted) (first quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); and then quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superseded by statute on other grounds*).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects of the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

1

### III. DISCUSSION

2      Defendant moves to dismiss all causes of action on the ground that the statute of

3   limitations has expired under California law.  Doc. No. 9-1 at 3–6.  Alternatively,

4   Defendant argues that Plaintiff fails to state a claim under Rule 12(b)(6).  *See id.*

5   **A.    Statute of Limitations**

6      Typically, under California law,[4] a claim "accrues when the claim is complete with

7   all of its elements," which "ordinarily occurs on the date of the plaintiff's injury."

8   *Slovensky v. Friedman*, 49 Cal. Rptr. 3d 60, 68 (Ct. App. 2006) (citing *Norgart v. Upjohn*

9   *Co.*, 981 P.2d 79, 88 (Cal. 1999)).  Under California law, the statute of limitations for

10  most tort claims alleging personal injury based upon a defective product is two years,

11  regardless of the legal theory invoked.  *Soliman v. Philip Morris Inc.*, 311 F.3d 966, 971

12  (9th Cir. 2002); *see* Cal. Civ. Proc. Code § 335.1; *Rustico v. Intuitive Surgical, Inc.*, 993

13  F.3d 1085, 1091 (9th Cir. 2021).

14     All of Plaintiff's claims stem from her Mesh Product implantation.  The Mesh

15  Product was implanted in Plaintiff on November 5, 2009.  Compl. ¶ 7.  "Subsequent to

16  the implantation Plaintiff began to experience painful bladder, bleeding, and inability

17  relieving her bladder."  *Id.* ¶ 8.  However, Plaintiff did not file the instant action until

18  June 1, 2021.  *See* Compl.  Plaintiff does not oppose or otherwise address the statute of

19  limitations issue in opposition.  *See* Doc. No. 10.  Accordingly, because implantation

20  occurred over twelve years ago, Plaintiff's claims are untimely.  *Id.* at 4.

21     *1.    Discovery Rule*

22     "An important exception to the general rule of accrual is the 'discovery rule,'

23  which postpones accrual of a cause of action until the plaintiff discovers, or has reason to

24  discover, the cause of action."  *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 920

25

26

27  _____

[4] "A federal court sitting in diversity jurisdiction must generally apply the law of the forum state

28  regarding whether an action is barred by the statute of limitations."  *Hendrix v. Novartis Pharm. Corp.*,
975 F. Supp. 2d 1100, 1105 (C.D. Cal. 2013).

(Cal. 2005) (first citing *Norgart*, 981 P.2d at 88; and then citing *Neel v. Magana*, 491 P.2d 421, 427–28 (Cal. 1971)). As to discovery of the "elements" of the cause of action, the court "look[s] to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." *Id.* Thus, the rule only "delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Id.* In other words, a plaintiff is "charged with presumptive knowledge of an injury"—meaning both the physical or economic injury and its negligent cause—"if they have information of circumstances to put them on inquiry or if they have the opportunity to obtain knowledge from sources open to their investigation." *Id.* (internal quotations, citations, and alterations omitted); *see also Parsons v. Tickner*, 37 Cal. Rptr. 2d 810, 816 (Ct. App. 1995) (stating that a plaintiff has presumed knowledge where she has "the opportunity to obtain knowledge from sources open to [her] investigation (such as public records or corporation books)").

In order to rely on the discovery rule for delayed accrual of a cause of action, "[a] plaintiff whose complaint shows on its face that [her] claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *McKelvey v. Boeing N. Am., Inc.*, 86 Cal. Rptr. 2d 645, 651 (Ct. App. 1999), *superseded by statute on other grounds by Lopez v. Sony Elecs., Inc.*, 420 P.3d 767 (Cal. 2018). The plaintiff bears the burden of demonstrating reasonable diligence, and "conclusory allegations" of diligence will not suffice on a motion to dismiss. *E-Fab, Inc. v. Accountants, Inc. Servs.*, 64 Cal. Rptr. 3d 9, 17 (Ct. App. 2007). In order to adequately alleges facts supporting a theory of delayed discovery, "the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered the facts supporting the cause of action within the applicable statute of limitations period." *Fox*, 110 P.3d at 921. Plaintiff "must specifically plead facts to show . . . [her] inability to have made earlier discovery despite reasonable diligence," rather than just concluding she could not have. *Plumlee v. Pfizer, Inc.*, 664 Fed. App'x 651, 651 (9th Cir. 2016) (citing *Grisham v. Philip Morris U.S.A.,*

*Inc.*, 151 P.3d 1151, 1159 (Cal. 2007)); *see also Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1056 (9th Cir. 2008) (illustrating that under both the delayed discovery and fraudulent concealment doctrines, a plaintiff is charged with presumptive knowledge of facts he or she could have discovered with exercise of due diligence).

The discovery rule does not cure Plaintiff's untimeliness. As to the discovery rule's first requirement, Plaintiff fails to provide any specific factual context as to the timing and manner of her discovery. She merely alleges that she could not have reasonably discovered the causes of action until "one year of the filing of this complaint." Compl. ¶ 9. This boilerplate language is insufficient to plausibly allege that the first discovery rule element applies.

As to the second requirement, Plaintiff does not allege facts evincing her inability to have made an earlier discovery despite a reasonably diligent investigation. Plaintiff merely concludes without factual support that she "did not and, despite exercising reasonable diligence, including consultation with medical professionals, could not discover the existence of her legal cause of action or the injuries caused by Defendant's breach of duty and/or product defects until within one year of the filing of this complaint." Compl. ¶ 10. Plaintiff further provides that "[o]n the basis of the information Plaintiff received from her treating physicians, Plaintiff reasonably did not suspect or have reason to suspect that the wrongful cause of her injuries was the [Mesh] Product." *Id.* ¶ 8. However, these sentences are conclusory and insufficient under Rule 12(b)(6). To wit, Plaintiff fails to allege that even with reasonable diligence, she would not have discovered the elements to her claims.

In fact, the contrary appears on the face of the Complaint. According to Plaintiff's allegations, she should have discovered the allegedly wrongful cause of her injury much earlier based on the apparent "opportunity to obtain knowledge from sources open to [her] investigation." *Fox*, 110 P.3d at 920. Specifically, Plaintiff states that in June 2011, "the FDA issued a Safety Communication wherein the FDA stated that 'serious complications associated with surgical mesh for transvaginal repair of [pelvis organ

prolapse] are *not rare.*'"   Compl. ¶ 29.  Plaintiff also provides information in the FDA

Safety Communication relating to the risks of using mesh inside the body.  *See id.* ¶¶ 30,

34.  Additionally, Plaintiff describes a December 2011 joint publication by the American

College of Obstetricians and Gynecologists and the American Urogynecologic Society

identifying the potential complications relating to mesh inside the body.  *Id.* ¶¶ 31–32.

Furthermore, Plaintiff describes the existence of other studies and publications since 2009

discussing the impact of pelvic organ prolapse with mesh.  *See, e.g.*, *id.* ¶¶ 35–38

(describing an FDA publication contemporaneously released with the Safety

Communication that discusses mesh repair complications compared to non-mesh repair);

¶ 40 (discussing the FDA's 2011 acknowledgment of the need for further data on repairs

that use mesh); ¶ 41 (describing a 2013 publication about pelvic mesh complications);

¶ 45 (discussing the FDA's order to all surgical mesh manufacturers intended for

transvaginal repair in April 2019 to "stop selling and distributing their products

immediately"); ¶ 53 (describing and citing an article about complications from mesh

placement).  Accordingly, Plaintiff fails to plead that the delayed discovery rule applies

to extend the accrual of her causes of action.

### 2.   *Fraudulent Concealment*

Under California law, the doctrine of fraudulent concealment, "[a] close cousin of

the discovery rule," may also toll the statute of limitations, "where a defendant, through

deceptive conduct, has caused a claim to grow stale."  *Bernson v. Browning-Ferris

Indus.*, 873 P.2d 613, 615 (Cal. 1994); *Allen v. Similasan Corp.*, 96 F. Supp. 3d 1063,

1071 (S.D. Cal. 2015) (quoting *Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871, 875 (Cal.

2013)).  If applicable, the statute of limitations is only tolled "for that period during

which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise

of reasonable diligence, should have discovered it."  *Sanchez v. S. Hoover Hosp.*, 553

P.2d 1129, 1134 (Cal. 1976).  The rationale behind this equitable rule is to prevent a

defendant from "profiting by his own wrong to the extent that it hindered an 'otherwise

diligent' plaintiff in discovering his cause of action." *Bernson*, 873 P.2d at 615 (quoting *Sanchez*, 553 P.2d at 1134).

To invoke the doctrine, "a plaintiff must allege the supporting facts [of the fraud]—i.e., the date of discovery, the manner of discovery, and the justification for the failure to discover the fraud earlier—with the same particularity as with a cause of action for fraud." *Fuller v. First Franklin Fin. Corp.*, 163 Cal. Rptr. 3d 44, 50 (Ct. App. 2013) (citing *Cmty. Cause v. Boatright*, 177 Cal. Rptr. 657, 664–65 (Ct. App. 1981)), *as modified on denial of reh'g* (June 24, 2013); *see also Jaeger v. Howmedica Osteonics Corp.*, No. 15-cv-00164-HSG, 2016 WL 520985, at *11 (N.D. Cal. Feb. 10, 2016) ("[I]n a federal diversity action, a plaintiff alleging fraudulent concealment must satisfy the heightened pleading requirements of [Federal] Rule [of Civil Procedure] 9(b)."). The plaintiff must assert "the specific facts constituting the fraud." *River Colony Estates Gen. P'ship v. Bayview Fin. Trading Grp., Inc.*, 287 F. Supp. 2d 1213, 1222 (S.D. Cal. 2003). Further, a plaintiff must plead that "he or she used due diligence in an attempt to uncover the facts." *Allen*, 96 F. Supp. 3d at 1071 (citing *Hunter v. Gates*, 68 Fed. App'x 69, 71 (9th Cir. 2003)). Lastly, "[t]he factual basis for fraudulent concealment must differ from any cause of action for fraud that is pled." *Jaeger*, 2016 WL 520985, at *11; *see Deirmenjian v. Deutsche Bank, A.G.*, No. CV 06-00774 MMM (CWx), 2006 WL 4749756, at *42 (C.D. Cal. Sept. 25, 2006); *Kirsopp v. Yamaha Motor Co.*, No. CV14-00496 BRO (VBKx), 2015 WL 11197829, at *5 (C.D. Cal. Jan. 7, 2015). A plaintiff "must point to some fraudulent concealment, some active conduct by the defendant '*above and beyond* the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.'" *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2009) (quoting *Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006)). Otherwise, a plaintiff's "attempt to invoke equitable estoppel 'merges the substantive wrong with the tolling doctrine'" and eliminates the statute of limitations for claims arising out of the overlapping substantive wrong. *Coppinger-Martin v. Solis*, 627

F.3d 745, 751 (9th Cir. 2010) (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990)).

Here, as discussed above, Plaintiff does not allege either the date or the manner of discovery.  She similarly fails to specify in terms that would satisfy Rule 9(b) how Defendant acted deceptively to conceal information from Plaintiff.

In her Complaint, Plaintiff appears to assert that Defendant did not act and passively failed to inform the public of the risks of the Mesh Product.  Compl. ¶¶ 54, 57, 59, 63, 68.  Nevertheless, "passive concealment of information" is insufficient.  *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 886 (N.D. Cal. 2015); *see Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416 (9th Cir. 1987) ("[S]ilence or passive conduct does not constitute fraudulent concealment." (citing *Rutledge v. Bos. Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978))); *Thorman v. Am. Seafoods Co.*, 421 F.3d 1090, 1095–96 (9th Cir. 2005) ("Merely keeping someone in the dark is not the same as affirmatively misleading [her].").

Moreover, insofar as Plaintiff intends to base her fraudulent concealment argument on affirmative representations, she fails to describe with any specificity statements, whether on labels or advertisements, that Defendant was purportedly responsible for and which were allegedly fraudulent.  In her Complaint, Plaintiff makes generic statements about Defendant's alleged fraud but does not provide specific facts concerning fraud.[5] Such conclusory allegations are insufficient to plead the "specific facts constituting fraud." *River Colony Estates*, 287 F. Supp. 2d at 1222; *Jaeger*, 2016 WL 520985, at *15

---

[5] For example, Plaintiff states: "Defendant omitted and downplayed the risks, dangers, defects, and disadvantages of their produces, including the Mesh Product, and advertised, promoted, marketed, sold and distributed the Mesh Product as a safe medical device when Defendant knew or should have known that the Mesh Product was not safe for its intended purposes;" "Defendant underreported and continues to underreport information about the propensity of their products, including the Mesh Product, to fail and cause injury and complications, and have made unfounded representations regarding the efficacy and safety of the Mesh Product through various means and media;" and "Defendant knowingly provided incomplete and insufficient training and information to physicians regarding the use of the Mesh Product and the aftercare of patients implanted with the Mesh Product."  Compl. ¶¶ 59, 63, 68.

(providing that a "generalized allegation" that a defendant "actively conceal[ed]" any cause of action does not satisfy Rule 9(b)).

Further, Plaintiff does not allege that she—with due diligence or otherwise—ever attempted to discover the cause of her injury.  In fact, Plaintiff does not make any assertions that she attempted to discover the cause of her injury beyond visiting her treating physicians and relying upon their statements that her injuries had alternative causes.  *See* Compl. ¶ 8.  As discussed, Plaintiff also fails to allege facts demonstrating that, had she exercised due diligence in investigating the cause of her pain and injuries, she would not have been able to access or discover the literature describing the risks, complications, and impact of the Mesh Product to treat stress urinary incontinence.

Lastly, the factual basis for the alleged fraudulent concealment does not differ from the grounds of Plaintiff's claims.  Plaintiff's claims rely in part upon Defendant's allegedly defective product and failure to warn of the product's defects.  For example, in her opposition, Plaintiff addresses the specifics of Defendant's fraud as it relates to her negligent representation cause of action.  *See* Doc. No. 10 at 9–11.  However, these allegations are not sufficient for fraudulent concealment because the fraudulent concealment factual basis "must differ from any cause of action for fraud that is pled." *Jaeger*, 2016 WL 520985, at *11.  Therefore, Plaintiff fails to "point to some fraudulent concealment, some active conduct by [Defendant] 'above and beyond the wrongdoing upon which'" Plaintiff's actions are based.  *Lukovsky*, 535 F.3d at 1052.  Therefore, Plaintiff fails to adequately plead that fraudulent concealment applies to extend the accrual of her causes of action.

## B.    Leave to Amend

Federal Rule of Civil Procedure 15(a) states that "leave to amend shall be freely given when justice so requires."  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010); *see also Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (noting leave to amend should be granted with "extreme liberality").  A court should grant leave to amend unless the court "determines that the pleading could

1   not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1127.

2   In determining whether to grant leave to amend, courts generally consider four common

3   factors: (1) undue delay, (2) bad faith or dilatory motive, (3) prejudice to the opposing

4   party, and (4) futility of amendment. *Ditto v. McCurdy*, 510 F.3d 1070, 1079 (9th Cir.

5   2007); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

6         Here, the Court finds no undue delay, bad faith or dilatory motive, prejudice to the

7   opposing party, or futility of amendment.  Therefore, the Court **GRANTS** Plaintiff

8   twenty-one (21) days leave to file an amended complaint.

9   **IV. CONCLUSION**

10         For the foregoing reasons, the Court **GRANTS** Defendant's motion and

11   **DISMISSES** all four claims.  The Court **DIRECTS** Plaintiff to file an amended

12   complaint, if any, on or before **December 22, 2021**.

13         **IT IS SO ORDERED**.

14   Dated:  December 1, 2021

15

16   HON. MICHAEL M. ANELLO
     United States District Judge

17